UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES STANLEY,

                Plaintiff,                Case Number 19-11589

v.                                          Honorable David M. Lawson

MACOMB COUNTY,

                Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**

After a four-day jury trial in this First Amendment retaliation case, a jury returned a verdict in the plaintiff's favor against defendant Macomb County in the amount of $250,000. Plaintiff James Stanley filed a motion for attorney's fees and expenses under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d) seeking an award of $104,491.08. The Court heard oral argument on November 15, 2023. The defendant argues that the decision on attorney's fees should await the outcome of the County's appeal of the verdict. However, because the County likely will challenge the fee decision on appeal, and the defendant's argument against liability is weak, efficiency counsels in favor of adjudicating the fee motion now. Based on the parties' submissions, the plaintiff is entitled to an attorney fee award under 42 U.S.C. § 1988 as the prevailing party in this civil rights action. With the exception of approximately 30 hours, Stanley's fee request is reasonable, and Macomb County's objections lack merit. However, his request for taxable costs should have been submitted to the Clerk under the local rules. The Court will grant in part the motion for attorney's fees in the amount of $92,862.50 and permit the plaintiff to resubmit a bill of costs in compliance with Local Rule 54.1.

I.

The parties are familiar with the facts of the case. To summarize, plaintiff James Stanley was a correctional officer employed by the Macomb County Sheriff's Department. On August 25, 2017, he filed a civil complaint in federal court alleging that Macomb County Sheriff Anthony Wickersham and Captain Walter Zimney retaliated against him for supporting Wickersham's opponent in the 2012 election for Macomb County Sheriff. The Honorable Avern Cohn granted summary judgment for the defendants in that case on November 8, 2018. However, Stanley said that he encountered additional abuse at work as a result of his lawsuit, including being prosecuted by county officials for incidents arising from his duties at the jail. He filed the present case against Sheriff Wickersham, Undersheriff Elizabeth Darga, and Macomb County under 42 U.S.C. § 1983 alleging retaliation in violation of his rights under the First Amendment, and after those prosecutions terminated in his favor he proceeded with the lawsuit. The Court granted Sheriff Wickersham's motion to dismiss, and the case proceeded to trial against the other two defendants. The jury found in favor of Undersheriff Darga and against the County.

After the verdict was returned, Stanley filed a motion for attorney's fees and expenses broken down as follows:

| Item | Total Charge |
| --- | --- |
| Nanette Cortese - Attorney's Fee (325.5 hours) | $97,650 |
| Shaun McQuithey - Technology consultant fee | $4,437.50 |
| Transcripts of witness depositions | $2,060 |
| Mileage to and from court | $175.58 |
| Parking at court | $139 |
| Printing judge's copies | $17 |

| PACER fees | $10 |
|---|---|
| Postage for Judge's copies | $2 |
| **Total** | **$104,491.08** |

The plaintiff was represented in this case by attorney Nanette Cortese. According to her affidavit, Cortese currently is a sole practitioner and has worked as an attorney for more than 30 years, focusing primarily on employment law matters. She represented Stanley on a contingent fee basis and suggests a billing rate of $300 per hour.

In support of her work for Stanley, Cortese engaged Shaun McQuithey as a technology consultant. McQuithey has a background in technical support, having worked as a technical service representative for First Call Resolution. His rate is $50 per hour. During trial, McQuithey helped organize exhibits in a digital format and aided both the plaintiff and defendants with courtroom technology.

In support of his motion, plaintiff's counsel furnished detailed billing records. The invoices represent Cortese's work on the case between May 2019 and September 2023, totaling 325.5 hours. She did not include any charges incurred in the first lawsuit. Cortese charges time in quarter-hour increments. Some billing entries charge for activities like reviewing emails or reading notifications from the Court's docket management system. The invoices also include various expenses incurred during the litigation, such as McQuithey's fees, mileage to and from court, and the costs of producing witness deposition transcripts.

As mentioned earlier, Macomb County urges the Court to delay ruling on the plaintiff's motion until the Sixth Circuit has addressed its appeal, which, it says, may render the attorney's fees motion moot. But if the Court does address the plaintiff's motion, it maintains that the sum

requested is excessive since some of the expense went toward the plaintiff's unsuccessful retaliation claim against defendant Darga, which it believes is "very different" than the claim against itself. The County also takes issue with Cortese's billing rate, noting that it pays $210 an hour for outside counsel.

II.

Title 42, Section 1988(b), United States Code authorizes a court to award "a reasonable attorney's fee as part of the costs" to a prevailing party in a civil rights case brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). Typically, the reasonableness of an attorney's fee request is measured by the lodestar method to start. *NE. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A fee is reasonable under section 1988 if it is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Planned Parenthood Sw. Ohio Reg. v. DeWine*, 931 F.3d 530, 542 (6th Cir. 2019) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, a court must "exclude . . . hours that were not reasonably expended." *Id.* at 434 (quotation marks omitted).

A district court may adjust the lodestar in appropriate cases where it is "necessary to the determination of a reasonable fee. *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). To evaluate whether an adjustment is warranted, district courts are directed to consider the twelve so-called *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5, 93 (1989) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004); *Barnes*, 401 F.3d at 745-46.

Section 1988 also permits district courts to award those "incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quoting *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *9 (6th Cir. 2000) (table). These expenses include paralegal expenses, photocopying, travel costs, and telephone expenses. *Ibid.*

A.

Macomb County asks the Court to hold the plaintiff's motion for attorney's fees in abeyance pending the resolution of its appeal of the jury's verdict. It is well settled that a district court retains jurisdiction to decide whether to award attorney's fees during the pendency of an appeal. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Angelo*, No. 19-10669, 2023 WL 5983830, at *6 (E.D. Mich. Sept. 14, 2023); *Doe v. Univ. of Mich.*, No. 18-11776, 2020 WL 8920985, at *1 (E.D. Mich. Nov. 27, 2020); *Rees v. Iron Workers' Loc. No. 25 Pension Fund*, No. 14-12401, 2015 WL 13035128, at *1-2 (E.D. Mich. Dec. 23, 2015). The Court may either proceed to rule on the fee claim, defer its ruling, or deny the motion without prejudice and permit the party seeking fees to file it again after the appeal has been decided. *Rees*, 2015 WL 13035128, at *1-2 (citing *Dice Corp. v. Bold Techs.*, No. 11-13578, 2013 WL 1499081, at *1 (E.D. Mich. April 11, 2013)). "A

decision to defer consideration is usually informed by whether the claim for fees will likely be affected by the appellate decision." *Angelo*, 2023 WL 5983830, at *6.

The defendant county's main challenge to the verdict appears to be based on its belief that the elected sheriff was not a decision-maker whose conduct could render the county liable under *Monell* v. *v. Department of Social Services*, 436 U.S. 658 (1978).

It is well established, and the parties agree, that local governmental entities cannot be held liable under 42 U.S.C. § 1983 solely for the acts of their agents; they are accountable under that statute only for their own conduct. *Monell*, 436 U.S. at 691 (holding that "a municipality cannot be held liable [under section 1983] solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). The plaintiff, therefore, must point to an official policy, custom, or practice of that local government as the source of the constitutional violation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).

Stanley argued at trial that he could satisfy *Monell*'s requirement by pointing to the conduct of Anthony Wickersham, the elected county sheriff. And again, it is well settled that "[a] single act by a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered' may suffice in demonstrating that policy or custom." *Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)). But when a plaintiff proceeds on a single-act theory of liability against a municipal defendant, he "must demonstrate that a 'deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question.'" *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (quoting *Pembaur*, 475 U.S. at 483.

The Court determines whether a particular public official is a final policy decisionmaker within the meaning of *Pembaur*. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."). The Court did so at trial in this case and held that Sheriff Wickersham was such a person. Ironically, the plaintiff sued Wickersham initially, but the Court granted his motion to dismiss because the amended complaint failed to allege sufficient facts to support the plaintiff's theory that Wickersham had engaged in retaliatory conduct. Evidence that came out at trial established otherwise. The County remained in the case before trial because it never moved for dismissal or summary judgment.

However, the County does not challenge liability on that basis. Instead, it disagrees with the Court's holding that Sheriff Wickersham is a final policy-making official. For an answer to that question, the Court looks to state and local positive law and "'custom or usage' having the force of law." *Jett*, 491 U.S. at 437 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 124 n.1 (1988). *Jett*, 491 U.S. at 737. "Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue." *Ibid.* At trial, the jury found sufficient evidence to conclude that Wickersham's involvement in the referral of the plaintiff for prosecution (instead, for instance, of resorting to other forms of discipline as had been used in other cases) amounted to retaliation under the First Amendment. The County glossed over any challenge to the sufficiency of that evidence in its mid-trial Rule 50 motions. Its main focus was on Sheriff Wickersham's status as a final policy-making authority.

The Sixth Circuit, albeit in an unpublished decision, has framed this as a three-part inquiry: the decision at issue must be "(1) final, (2) not reviewable, and (3) unconstrained by the existing policies and practices of his supervisory officers." *Monistere v. City of Memphis*, 115 F. App'x 845, 853 (6th Cir. 2004). The evidence in the record is quite compelling that Sheriff Wickersham's decision to refer Stanley for prosecution easily satisfies each of these elements. In fact, the Sixth Circuit has held that Michigan sheriffs are final policymakers for their counties. *See Beck v. Haik*, 234 F.3d 1267, at *4 n.5 (6th Cir. 2000) (table) ("As a matter of well-settled Michigan law, [the Sheriff's] policies are those of the County.").

In *Beck*, the court considered a section 1983 claim against Manistee County, which at the time did not have a reorganized form of county government. In support of its holding that sheriffs are final policy makers, the *Beck* court cited *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985). In that case, a former inmate sued Wayne County and its sheriff, alleging that he was beaten by officers while in custody. *Marchese*, 758 F.2d at 181-83. Liability against the sheriff was based on a theory that he had failed to order and direct an investigation into the incidents. *Id.* at 184. The court of appeals affirmed the district court's conclusion that the sheriff could bind Wayne County as a policymaker. *Id.* at 188-89 ("The Sheriff is, however, the law enforcement arm of the County and makes policy in police matters for the County."). At the time, Wayne County had adopted a charter county form of government — the same form Macomb County now has. *See Lucas v. Wayne Cnty. Election Comm'n*, 146 Mich. App. 742, 744, 750, 381 N.W.2d 806, 807, 810 (1985) (noting that Wayne County adopted a home-rule charter which took effect on January 1, 1983); *see also* John Amrheim, *Elected county executives and county home rule in Michigan: Part one*, Michigan State University, https://perma.cc/5WHC-59PR (noting that Wayne and Macomb Counties have the same form of county government). In 1990, the Michigan Supreme

Court affirmed the *Marchese* court's conclusion about the relationship between Wayne County and its sheriff, although the events giving rise to the plaintiff's section 1983 claim occurred in 1976, before the County reorganized. *See Rushing v. Wayne Cnty.*, 436 Mich. 247, 251, 260, 462 N.W.2d 23, 25, 29 (1990).

Macomb County contends that the change in its form of government to a charter county should alter that conclusion. But, as suggested by the decisions cited earlier, Michigan law does not support that argument. The county sheriff remains a final policymaking official under that unified system of government.

The Michigan Legislature permits counties to adopt a home rule form of government. Mich. Comp. Laws § 45.501, *et. seq*. However, provisions of a county charter that conflict with the state constitution are invalid. For example, the Michigan Constitution still "requires the [sheriff] to be elected to four-year terms" in counties that have adopted the modified system. *Lucas*, 146 Mich. App. at 750, 381 N.W.2d at 810 (citing Mich. Const. art. VII, § 4). When a county converts to charter government status, the new office of the county executive has the authority to "[s]upervise, direct, and control the functions of all departments of the county *except* those headed by elected officials." Mich. Comp. Laws § 45.511a(8)(a) (emphasis added). Moreover, the charter must provide for the partisan election of a county sheriff, Mich. Comp. Laws § 45.514(1)(c), emphasizing the independent status of the role.

The Macomb County Charter does not modify substantially the usual structure of the sheriff's department. Article VI of the Charter establishes the department and notes that it is led by an elected sheriff. Macomb County Charter, art. VI, § 6.1. The Charter provides that the powers and duties of the department are those provided by law for a county sheriff. *Id.* at § 6.1.1. The Charter does not indicate that any other official constrains the discretion of the sheriff in the

exercise of his duties. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). In fact, the Charter expressly exempts departments headed by countywide elected officials — like the sheriff's department — from the purview of the County Executive. *See* Macomb County Charter at § 3.5(a) (noting that the County Executive has the authority to "[s]upervise, coordinate, direct, and control all County departments except for departments headed by Countywide Elected Officials . . . except as otherwise provided by this Charter or law.").

The Charter does provide some limited procedures for the removal of the sheriff by the action of an ethics board and by recall election. *Id.* at §§ 10.2, 10.12. And the state's governor may remove a county sheriff under certain conditions. *See* Mich. Comp. Laws § 168.207. But those provisions do not undermine the elected sheriff's status as a final policy-making official. And they do not alter the holding in *Beck*, that the elected sheriff's "policies are those of the County." 234 F.3d at *4 n.5.

Because the main premise of the County's appellate argument against liability is weak, it is not prudent to delay a decision on the plaintiff's attorney's fee motion.

B.

The County disputed the amount of Stanley's fee request mainly on two bases: it contests the hourly rate demanded by attorney Cortese; and it says that there should be a reduction because the plaintiff did prevail in full, since the jury found in favor of defendant Darga.

1.

Macomb County argues that Cortese's $300 hourly rate is not reasonable and suggests instead that the Court apply the rate it pays outside counsel: $210 per hour. The Court has broad discretion to determine the reasonable hourly rate for an attorney, *see Husted*, 831 F.3d at 715, but the Sixth Circuit has directed courts to look to the prevailing market rate, which is defined by the

- 10 -

rate charged by attorneys of comparable skill and experience in the jurisdiction where the court sits, *ibid.* (citing *Geier*, 372 F.3d at 791). To determine a rate, a court may consult "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 715 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011)).

In support of the requested rate, the plaintiff relies principally on the State Bar of Michigan's 2023 Economics of Law Survey. *See 2023 Economics of Law Survey Results*, State Bar of Michigan, (2023), https://perma.cc/9UZX-QUC5 ("Survey"). Courts in this district frequently refer to those surveys, *see, e.g.*, *Fortech S.R.L. v. Motor Consultants of Am., Inc.*, No. 22-11648, 2023 WL 5511184, at *3 (E.D. Mich. Aug. 25, 2023); *White v. Sports and Custom Tees, Inc.*, No. 22-10218, 2023 WL 2810834, at *10 (E.D. Mich. Apr. 6, 2023); *Khalaf v. Ford Motor Co.*, No. 15-12604, 2019 WL 10301740, at *3 (E.D. Mich. Sept. 11, 2019), and the Sixth Circuit has cited approvingly a district court's use of earlier versions of the survey, *Waldo*, 726 F.3d at 822; *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020).

According to the latest edition, Cortese's $300 per hour rate is in line with, if not slightly below, that of similarly situated practitioners. The median hourly rate charged attorneys with more than 30 years of experience is $342. Survey, at 6. The median rate charged by practitioners working in Macomb County is $300. *Id.* at 7. And the median rate charged by plaintiffs' employment lawyers is $400. *Id.* at 8. It is reasonable to use a $300 hourly rate for the computation of the lodestar.

2.

Macomb County argues it should not be solely responsible for Stanley's attorney's fees since the jury did not find co-defendant Darga liable. Although it is not clearly stated, this appears to be a request for a downward adjustment from the lodestar. This argument is unpersuasive.

It is true that "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790 (1989). "Fairness requires . . . that fees be divided among only responsible defendants." *Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dep't of City of White Plains*, 533 F. Supp. 1054, 1064 (S.D.N.Y. 1982). In *Hensley*, the Supreme Court recognized that a single lawsuit may present claims based on distinct facts and legal theories, whose differing success would affect the total compensation. *Hensley*, 461 U.S. at 434-35. But where a suit involves a common core of facts or interrelated legal theories, "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id*. at 435. Instead, the attorney should be compensated based on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Ibid.*

Stanley's claims against Macomb County and Darga are interrelated, so awarding full fees against Macomb County is reasonable in light of his successful verdict. To succeed on a First Amendment retaliation claim, Stanley had to establish that he engaged in protected speech, an adverse action was taken against him, and that there was a causal connection between the protected speech and the adverse action. *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). To hold the County liable, Stanley had to prove that the "adverse action" was taken by a a person with final policy-making

authority. *Burgess*, 735 F.3d at 479. In this case, the Court instructed the jury that the relevant final policymaker was Sheriff Wickersham.

It is readily apparent that the facts underlying Stanley's claim against Macomb County were closely related to his claim against Undersheriff Darga. The relevant protected speech and the alleged retaliation applied equally to both defendants, but the parties disputed the roles played by Darga and Wickersham. *See* Joint Final Pretrial Order, ECF No. 38, PageID.482-85. Much of the testimony during trial sought to answer whether Stanley's protected conduct caused one or both defendants to refer him for prosecution. Each of the witnesses, except for Stanley's former wife, whose testimony related to his damages, provided relevant testimony on that element.

Nevertheless, Macomb County insists that many witnesses (although it does not specify which ones) did not provide relevant testimony about the issue of the sheriff's role. That assertion is not accurate. Of the ten trial witnesses, seven—Stanley, Darga, Abdoo, DeBruin, Femminineo, Kennedy, and Stevens—provided testimony that was either directly or arguably relevant to the issue of the sheriff's (and, therefore, the County's) involvement in Stanley's prosecution. Of the remaining witnesses, Nicole Stanley's testimony went to the issue of damages, an issue relevant to both defendants; Sergeant Jones and Officer Pulizzi testified to the circumstances surrounding the use of force incidents that were the subject of Stanley's criminal prosecution, a topic that might have undermined the County's defense that it would have recommended prosecuting Stanley despite his protected conduct. Admittedly, not all of the testimony pointed in the same direction regarding the sheriff's role, but based on the evidence, the jury concluded that the County was liable and that Darga was not. This outcome represents a significant and successful result for the plaintiff. His counsel's billing entries do not highlight work devoted solely to the case against

defendant Darga, and the County does not identify any. The plaintiff's fee award will not be reduced because the jury was not convinced that Darga was individually liable.

3.

The County's objection aside, there is a good reason to reduce Cortese's claimed hours for the purpose of calculating the lodestar. Cortese submitted her billing statements in quarter-hour increments, a practice some courts have criticized as lending itself to over-billing. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013) (citing *Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 549 (6th Cir. 2012)). There is reason to believe that the practice led to overbilling here. Of particular note, Cortese's invoices include numerous quarter-hour entries for activities like reading emails related to the case or reviewing notifications generated by the Court's docket management system. Some of the charges even seem to correspond to time spent viewing notifications generated by the docket management program for documents she submitted. There are seven quarter-hour entries (1.75 hours) for time associated with reviewing notices sent by the docket system. And there are 112 quarter-hour entries (29 hours) associated with reading emails. Although some of this work likely took more than a perfunctory amount of time, in many instances Cortese billed separately for time spent *responding* to the emails. In total, those charges appear to add approximately $9,225 to the bill. These costs are excessive, as it would not take a reasonable practitioner fifteen minutes to read most emails. The Supreme Court has recognized that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*)). Therefore, the Court will exclude that time, 30.75 hours, from the calculation.

4.

In addition to her own hours, Cortese seeks recovery for certain expenses incurred during the litigation, such as Shaun McQuithey's compensation, deposition transcript fees, mileage, and parking charges. The Court has the statutory authority under section 1988 to award expenses that are "incidental and necessary." *Waldo*, 726 F.3d at 827 (quoting *Sigley*, 2000 WL 145187, at *8). Recoverable expenses include those typically charged to a fee-paying client, such as photocopying, paralegal expenses, and travel and telephone costs. *Ibid.*

Here, Stanley seeks $4,437.50 for McQuithey's fees, $2,060 in deposition transcript preparation; $175.58 in mileage; $139 for court parking fees; $17 for copying, $10 for PACER access, and $2 for postage. The defendant does not object to these expenses, and the plaintiff will receive compensation for them. Notably, Mr. McQuithey functioned as a paralegal in the case and graciously provided technology assistance to the defendant during trial even though the Court directed the defendants to bring their own technology aide.

However, some of Stanley's claimed expenses are taxable under Federal Rule of Civil Procedure 54(d). The costs that are permitted to prevailing parties under that Rule are those allowed by 28 U.S.C. § 1920, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) ("[Section] 1920 defines the term 'costs' as used in Rule 54(d)."), and include filing and service fees, costs of transcripts "necessarily obtained for use in the case," witness fees, and docket fees. Local Rule 54.1 states the procedure seeking taxable costs:

> A party seeking costs must file a bill of costs no later than 28 days after the entry of judgment. The clerk will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the court's web site.

E.D. Mich. LR 54.1. The plaintiff included his costs as part of his motion for attorney's fees, which was filed fourteen days after judgment was entered. Although timely, the taxable costs were

not presented to the clerk in the form prescribed by the Bill of Costs Handbook. *See* Eastern District of Michigan Bill of Costs Handbook (rev. Nov. 2013) ("Handbook"). That oversight is one of form, not substance, and can be corrected. *Pucci v. Somers*, 834 F. Supp. 2d 690, 704-05 (E.D. Mich. 2011). The Court will permit Stanley to resubmit a bill of costs in the manner prescribed by Local Rule 54.1 so that the Clerk may tax the proper costs of the action.

III.

Stanley properly has documented his motion for attorney's fees and expenses. He is the prevailing party in the case and is entitled to the fees and expenses under 42 U.S.C. § 1988. And there is no good reason to delay the decision on his motion. The lodestar, based on a reasonable hourly rate of $300 per hour and a reasonable charge of 294.75 hours, amounts to $88,425. There is no reason presented by the record to vary from that amount. The Court also approves the amount of $4,437.50 for Shaun McQuithey's expense.

Accordingly, it is **ORDERED** that the plaintiff's motion for attorney's fees and expenses (ECF No. 46) is **GRANTED IN PART**. The plaintiff shall recover of the defendant Macomb County the sum of $92,862.50 for attorney's fees and expenses under 42 U.S.C. § 1988.

It is further **ORDERED** that the plaintiff may submit a Bill of Costs to the Clerk under Local Rule 54.1 **on or before January 22, 2024**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 9, 2024