# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 19, 2024

Ms. Nanette L. Cortese
Cortese Law Firm
30200 Telegraph Road
Suite 400
Bingham Farms, MI 48025

Mr. Peter C. Jensen
Mr. John A. Schapka
Macomb County Corporation Counsel
1 S. Main Street
Eighth Floor
Mt. Clemens, MI 48043

      Re:  Case No. 23-1842, *James Stanley v. Macomb County, MI*
           Originating Case No. : 2:19-cv-11589

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                              Sincerely yours,

                              s/Cathryn Lovely
                              Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0359n.06

No. 23-1842

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

> **FILED**
> Aug 19, 2024
> KELLY L. STEPHENS, Clerk

| | |
|---|---|
| JAMES STANLEY, <br>     Plaintiff-Appellee, <br><br> v. <br><br> MACOMB COUNTY, MICHIGAN, <br>     Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN <br><br> OPINION |

Before: GRIFFIN, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff James Stanley alleges Macomb County Sherriff Anthony Wickersham instituted a county policy of retaliation against him for having filed an employment-discrimination lawsuit against Macomb County. Stanley claimed in a prior lawsuit that the County demoted him because he supported Wickersham's political opponent in a prior election. After he lost in court, Stanley was disciplined for using excessive force against a detainee, suspended with pay, and criminally charged for assaulting that detainee and another. Both criminal charges resulted in acquittals. Stanley sued the County for unlawful retaliation and a jury found in his favor. Now the County appeals, arguing that Stanley failed to prove that it had a policy that violated Stanley's constitutional rights. We affirm.

No. 23-1842, *Stanley v. Macomb Cnty.*

I.

In 2016, Stanley was temporarily demoted from his position as a sergeant at the Macomb County Jail; an arbitrator subsequently reversed that decision. One year later, Stanley sued Macomb County Sherriff Anthony Wickersham and the County, alleging that his demotion was retaliation for supporting Wickersham's opponent in the 2012 election.

While that lawsuit was ongoing, Stanley was involved in two videotaped incidents of use of force against detainees at the jail. In July 2018, Stanley injured Cody Tindall's nose while helping officers place Tindall in a restraint chair. Two months later, Stanley tased Steven Howe for disobeying officers' orders to lie down while officers entered Howe's cell to place him in a restraint chair. The County did not take any disciplinary actions against Stanley when the incidents occurred.

The district court granted summary judgment against Stanley in his retaliation lawsuit against the County shortly after the Howe incident. *Stanley v. Macomb Cnty.*, 2018 WL 5840738, at *1 (E.D. Mich. Nov. 8, 2018). Just over one month later, Undersheriff Elizabeth Darga reprimanded Stanley for the Howe incident and ordered him to undergo "remedial training" with the Sheriff's Department's use-of-force expert, Sergeant Phil Abdoo. Two months after that, Sergeant Scott Jones discovered the Tindall video and brought it to his supervisor's attention. Darga and Wickersham decided it warranted further investigation. So Darga ordered Captain David Kennedy to have Lieutenant Melissa Stevens review it, and Stanley was suspended with full pay and benefits.

Kennedy thus ordered Stevens to further investigate *both* of Stanley's uses of force for potential criminal charges (despite Darga's prior disciplining of Stanley for the Howe incident); Kennedy did not ask Stevens to consider potential criminal charges against any other officers.

-2-

No. 23-1842, *Stanley v. Macomb Cnty.*

Stevens reviewed the videos and interviewed the officers present for the Tindall incident—each officer told her that Stanley did not assault Tindall and that Tindall's injury was an accident. The record is unclear regarding the scope of Stevens's review of the Howe incident.

Nonetheless, Stevens believed Stanley assaulted both detainees, so she referred both cases to the Macomb County Prosecutor who filed assault charges relating to the Tindall and Howe incidents. When Stanley was booked into jail, the booking area was not cleared to give him privacy, unlike what Stanley claims was customary for other Department employees who had been arrested. Both criminal charges were ultimately resolved in Stanley's favor—Judge Jake Femminineo (the judge for both criminal cases) entered a directed verdict in Stanley's favor regarding the Howe incident, and a jury returned a not-guilty verdict for the Tindall incident.

At some point before the Tindall verdict, Kennedy separately asked Abdoo to review the Tindall video. Abdoo watched the video and read all reports on the matter before telling Kennedy that he thought Stanley used an appropriate amount of force. So Kennedy brought Abdoo to a meeting with Darga and Wickersham where Abdoo reiterated his no-excessive-force conclusion. According to Abdoo, Wickersham disagreed and "stated something to the effect of, 'I talked to [Judge Femminineo] this morning and this charge will not be dropped.'"

That same day, Kennedy told Abdoo not to prepare a written report about the Tindall incident. Those directions differed from the Department's normal practice to require a written report. Abdoo testified he could not recall a single other time when he was asked to review a use of force, found the force appropriate, and was instructed not to prepare a written report. Similarly, Abdoo could not recall any other instance in which he told Wickersham that he believed a use of force was appropriate and Wickersham disagreed with him.

No. 23-1842, *Stanley v. Macomb Cnty.*

Stanley eventually sued Wickersham, Darga, and the County under 42 U.S.C. § 1983, alleging that they unconstitutionally retaliated against him for previously suing the County. The district court dismissed Stanley's claims against Wickersham before trial, but the case proceeded to trial against Darga and the County. After Stanley finished his case in chief, Darga and the County moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The district court denied the motion as to the County and took Darga's under advisement. Defendants then presented their case, and the jury returned a verdict in favor of Stanley against the County but not Darga. The County did not renew its motion for judgment as a matter of law under Rule 50(b) after the jury verdict. The County now appeals.

II.

As an initial matter, the County's failure to renew its motion for judgment as a matter of law would ordinarily end this case because "the precise subject matter of a party's Rule 50(a) motion—namely, its entitlement to judgment as a matter of law—cannot be appealed unless that motion is renewed pursuant to Rule 50(b)." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006). But the Rule 50(b) requirement is a nonjurisdictional, mandatory claims-processing rule that can be forfeited. *Maxwell v. Dodd*, 662 F.3d 418, 420–21 (6th Cir. 2011). Stanley did not raise the Rule 50(b) requirement, thus forfeiting the benefits he could have reaped. *Cf. Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019). We decline to exercise our discretion to excuse this forfeiture, *see id.*, and instead resolve this case on the merits.

III.

"We review a district court's denial of a motion for judgment as a matter of law or a renewed motion for judgment as a matter of law *de novo*." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). "[J]udgment as a matter of law may be granted only if in viewing the

-4-

No. 23-1842, *Stanley v. Macomb Cnty.*

evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Id.* (internal quotation marks omitted). "In making this determination, this court may not weigh the evidence, pass on the credibility of witnesses, or substitute our judgment for that of the jury." *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (internal quotation marks and brackets omitted).

"[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). "Instead, a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (alteration in original) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Relevant here, "[m]unicipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005); *Novak v. City of Parma*, 33 F.4th 296, 309 (6th Cir. 2022). "Whether a given individual is such a policymaker for purposes of § 1983 liability is a question of state law." *Miller*, 408 F.3d at 813 (internal quotation marks omitted).

On appeal, the County argues only that Stanley failed to prove that Wickersham established a qualifying policy; such sufficiency-of-the-evidence appeals are rarely successful, and this case is no exception. At trial, Stanley argued that Wickersham had a policy to:

> get James Stanley. Get him and get him good. And squash him like a bug so that he never sues the department and the Sheriff again. And send the word and send the message so that nobody else does either.

-5-

No. 23-1842, *Stanley v. Macomb Cnty.*

This argument was consistent with plaintiff's complaint that alleged:

> Sherriff Wickersham and Undersheriff Darga acted and ensured that it was a policy of the Department to take action against James Stanley, including, but not necessarily limited to: by directing that he be investigated and a basis for criminal charges be found; [and] by expressing an intention to reach out to a judge to attempt to ensure that the second criminal charges were not dismissed.

Although Stanley did not prove that the County had a written or express policy, to this effect, he was not required to do so. *See Miller*, 408 F.3d at 814. Viewing the evidence in the light most favorable to Stanley, the circumstantial evidence adequately shows that he was treated differently from other Department employees. By extension then, reasonable minds could conclude that the County had a policy to retaliate against—or in Stanley's words, to "get"—him culminating in his criminal prosecutions.[1]

Recall that Stanley supported Wickersham's opponent in the 2012 election, which he believed motivated his 2016 demotion. That demotion was reversed after arbitration and prompted Stanley to sue the County. Shortly after that lawsuit was dismissed, Stanley was reprimanded for the Howe incident and eventually suspended. Upon a referral by his superiors, Stanley's criminal charges came a few months later. And when Stanley was booked, he was not given the privacy that some of his other colleagues received when they had been arrested. Reasonable minds could conclude these acts specifically targeted Stanley.

It also could determine that this sequence of events was no accident. Jones happened to discover the Tindall video after Stanley's first lawsuit against the County and Wickersham was

---

[1] Normally, we have treated retaliation cases like this one that rely on criminal complaints the same way that we treat malicious-prosecution claims, and a prosecutor's independent determination of probable cause has been a strong defense. *See Marcilis v. Township of Redford*, 693 F.3d 589, 604 (6th Cir. 2012); *Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019). But the County failed to raise this defense either below or on appeal, so we need not and do not consider it here. *See Cradler v. United States*, 891 F.3d 659, 665 (6th Cir. 2018).

No. 23-1842, *Stanley v. Macomb Cnty.*

dismissed. And even though Stanley had already been reprimanded for the Howe incident, Kennedy specifically instructed Stevens to review the Tindall and Howe videos to determine whether criminal charges should be brought against Stanley (and not any other officers). Despite the officers who were present at the Tindall incident telling Stevens that they thought Stanley used an appropriate amount of force in the Tindall incident, Stevens still referred both cases to the prosecutor's office.

Stanley testified that, when criminal charges are potentially involved, outside agencies normally handle the investigation, so the evidence adequately showed that this internal investigation was unusual in and of itself. Abdoo's testimony compounded these oddities. When he reviewed the Howe incident, Abdoo concluded that Stanley used excessive force and prepared a written report saying so, consistent with his usual practice. But his review of the Tindall incident did not follow that usual procedure. Abdoo told Kennedy that he thought Stanley used an appropriate amount of force against Tindall. Kennedy then brought Abdoo to Wickersham and Darga to explain his conclusion. That meeting was the only time Abdoo could recall Wickersham disagreeing with him about whether an officer used an appropriate amount of force against a detainee. In that meeting, Wickersham also "stated something to the effect of, 'I talked to [Judge Femminineo] this morning and this charge will not be dropped.'" And within a day of that meeting, Kennedy told Abdoo not to prepare a written report about the Tindall incident—a significant departure from his usual practice.

Finally, the Department never informed the prosecutor on Stanley's criminal cases about Abdoo's conclusion that Stanley used appropriate force against Tindall. The prosecutor learned of Abdoo's conclusion from Stanley's criminal-defense counsel and testified that "there [was] no way" Stanley would have learned from the prosecutor's office about Abdoo's view on the Tindall

No. 23-1842, *Stanley v. Macomb Cnty.*

incident. If Abdoo had prepared a written report, however, that exculpatory evidence would have been available and turned over to Stanley in the usual course of his criminal case.

This collective evidence sufficiently established a policy to punish Stanley for filing his lawsuit. It showed that he was treated differently from other Department employees who were criminally investigated and booked, and that he was specifically targeted for criminal investigation by his superiors. That even extended to Kennedy instructing Abdoo not to prepare a written report of the Tindall incident—a key change in protocol that reasonable minds could determine was taken specifically to avoid creating exculpatory evidence. Wickersham and Darga jointly making the decision to order Stevens to investigate the Tindall incident, and Abdoo's meeting with Wickersham, Darga, and Kennedy connect these actions to Wickersham. That meeting also evidenced Wickersham treating Stanley differently from other Department employees: it was the only time Wickersham disagreed with Abdoo's conclusion that a use of force was appropriate, and Wickersham's alleged conversation with Judge Femminineo could be seen as attempting to ensure Stanley's conviction in his case regarding the Tindall incident. Wickersham's actions during that meeting provided circumstantial evidence that he was motivated to punish Stanley, consistent with the policy to "get" Stanley. Given the Department's "paramilitary" structure, reasonable minds could conclude that Wickersham's focus on Stanley trickled down throughout the Department and influenced the actions of his subordinates.

The County does not engage with this analysis at all. Instead, it argues the jury's finding of a policy here conflicts with *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986), because Wickersham did not have "final authority" over whether Judge Femminineo dismissed Stanley's criminal case about the Tindall incident. True, Wickersham could not direct Judge Femminineo's actions in Stanley's criminal case. But Stanley never argued that speaking to and

No. 23-1842, *Stanley v. Macomb Cnty.*

attempting to influence the judge presiding over the criminal case of a Department employee was the policy at issue. Rather, he asserted that the policy was a wide-ranging one to retaliate against him and pointed to Wickersham's conversation with Judge Femminineo as evidence. As discussed, ample evidence established that Wickersham instituted the policy to punish Stanley. And that policy is attributable to the County because Wickersham can establish policies for which the County is liable. *See* Mich. Comp. Laws § 51.70 ("Each sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time."); *Rushing v. Wayne Cnty.*, 462 N.W.2d 23, 29 (Mich. 1990) ("Additionally, we note that, as a matter of law, the policies of the sheriff and the jail administrator regarding the operation of the jail were attributable to the county."); *Marchese v. Lucas*, 758 F.2d 181, 189 (6th Cir. 1985) ("We believe that the relationship between the County and the Sheriff's Department is so close as to make the County liable for the Sheriff's failure to train and discipline his officers and his ratification of the use of wanton brutality by members of his force . . . .").

For these reasons, we hold that Stanley presented sufficient evidence for reasonable minds to conclude that Wickersham instituted a county policy to retaliate against him.

IV.

Thus, we affirm the district court's judgment.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1842

JAMES STANLEY,

    Plaintiff - Appellee,

v.

MACOMB COUNTY, MICHIGAN,

    Defendant - Appellant.

FILED
Aug 19, 2024
KELLY L. STEPHENS, Clerk

Before: GRIFFIN, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk